UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DIANE CADE CASTRANOVA,

       Plaintiff,

v.                              CASE NO. 3:17-cv-983-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

       Defendant.
_____/

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her applications for a period of disability, disability insurance

("DIB"), and supplemental security income ("SSI").  Following an administrative

hearing held on June 28, 2016, the assigned Administrative Law Judge ("ALJ")

issued a decision, finding Plaintiff not disabled from November 23, 2011,[2] the

alleged disability onset date, through July 25, 2016, the date of the decision.[3]  (Tr.

19-32, 40-86, 261, 267.)

---

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge.  (Doc. 15.)

[2] Plaintiff's earlier applications for DIB and SSI were denied previously on
November 22, 2011.  (Tr. 87-100.)  As the ALJ stated, "[t]hat determination is *res
judicata* regarding the claimant's disability as of that date."  (Tr. 28.)

[3] Plaintiff had to establish disability on or before September 30, 2015, her date
last insured, in order to be entitled to a period of disability and DIB.  (Tr. 22.)

On appeal, Plaintiff argues that the ALJ improperly weighed the opinions of Linda Abeles, Ph.D., an examining physician, and Arthur Hamlin, Psy.D., a State agency non-examining physician, as to Plaintiff's mental limitations, and failed to weigh the opinions of Lance I. Chodosh, M.D., an examining physician, as to Plaintiff's physical limitations.  Defendant responds that the ALJ's decision is supported by substantial evidence and should be affirmed.  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Relevant Medical Evidence

### A. Examining Physicians

#### 1. Dr. Abeles

On November 22, 2013, Dr. Abeles, a licensed psychologist, performed a mental status examination of Plaintiff, reviewed pertinent medical records, and issued a report dated December 5, 2013. (Tr. 609.) She noted that as of the time of the evaluation, Plaintiff "was being followed at the Family Medical Center in Keystone Heights, and was taking the medications Meclizine, Dramamine, Xanax, and an unnamed anti-hypertensive medication." (Tr. 610.) Plaintiff described her daily activities as "preparing meals, performing household chores[,] including doing the laundry, washing the dishes and reading," and exercising inside her house. (*Id.*) Plaintiff reported that she did "not want to go outside" because she was "just an accident waiting to happen." (*Id.*)

Dr. Abeles noted that Plaintiff's speech was "overly loud" and her judgment abilities appeared "impaired and affected by mental illness." (*Id.*) Dr. Abeles explained:

[W]hen asked, "What is the thing to do if you find an envelope in the street that is sealed and addresse[d] and has a new stamp on it?" She responded, "I'm not going to be dumb enough to put it back in the mailbox and give it to the postman." The claimant's verbal reasoning abilities appeared somewhat decreased and in this regard it was noted that she was unable to name the similarities between a table and a chair. Ms. Castranova was able to successfully complete serial sevens. Her memory abilities appeared decreased, and in this regard she could . . . . recall only five numbers forward and only two out of three words at a five-minute delay.

(*Id.*)

During the interview, Plaintiff "reported experiencing feelings of depression along with anxiety [and] [s]poradic neurovegetative disturbances in sleep and appetite." (*Id.*) Plaintiff's "thought processes appeared marked by paranoia and often appeared circumstantial." (*Id.*) Dr. Abeles diagnosed Plaintiff with Anxiety Disorder NOS, Personality Disorder NOS with Dependent and Schizotypal Traits, and assessed a GAF score of 55. (Tr. 611.)

Under "Summary and Recommendations," Dr. Abeles wrote:

Diane Castranova is a 56-year-old female who reports applying for disability benefits on the basis of both medical and mental conditions[,] including panic attacks. Upon evaluation, the claimant appears to be suffering from symptoms of a thought disorder as well as a personality disorder[,] including dependent and schizotypal [t]raits. Ms. Castranova's presentation precludes her from obtaining or maintaining employment and in this regard, she would appear to have a great deal of difficulty in getting along with her supervisors or her peers. It is strongly recommended that Ms. Castranova be referred for a psychiatric evaluation to assess the need for medication. . . . Prognosis for future success in the workplace, if treatment recommendations are followed, is considered fair.

(*Id.*)

4

## 2.    Dr. Chodosh

On November 22, 2013, Dr. Chodosh performed a consultative examination of Plaintiff.  (Tr. 600.)  Plaintiff alleged disability due to back pain, vertigo, anxiety attacks, hypertension, shortness of breath, angina, dizziness, and scoliosis.  (*Id.*)  Under "Functional Status," Dr. Chodosh stated:

> This person is independent in activities of daily living.  She is able to walk and stand, but not very extensively.  She can sit.  She can bend over at the waist and squat occasionally.  She can lift 20 pounds occasionally.  Her hands function well.  She is physically able to drive, but avoids driving in heavy traffic or for long distances because of anxiety.  Vision, hearing, and speech are normal.

(Tr. 601.)

Plaintiff's general appearance was reported as "[s]ignificantly overweight, but otherwise healthy-appearing," her affect was anxious and talkative, and her "[m]ild pain behavior slightly limit[ed] the functional assessment."  (*Id.*)  Upon examination of the spine, Dr. Chodosh did not perceive scoliosis.  (Tr. 602.)  Plaintiff's cervical range of motion was "slightly decreased by pain."[4]  (*Id.*)  She indicated "inability to squat and rise completely."  (Tr. 603.)  The range of motion was normal except for rotation of the cervical spine, which was 70 out of 80 degrees, forward flexion of the lumbar spine, which was 70 out of 90 degrees, and extension of the lumbar spine, which was 20 out of 25 degrees.  (Tr. 604.)

---

[4] Dr. Chodosh indicated that "assessment activity could not be completed because claimant complained of pain, or requested that it be stopped."  (Tr. 603.)

Dr. Chodosh's impressions/comments included:

1. Mental health issues, including apparent panic disorder. A separate psychological assessment is indicated.
2. Chronic back pain of uncertain etiology, without physical signs of impairment.
3. Hypertension, apparently well-controlled and without complications.
4. Nonspecific dizziness, without physical signs of impairment on today's exam.
5. Based only on objective evidence[,] this person is able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally.

(Tr. 603.)

### 3.     Robert A. Greenberg, M.D.

On March 13, 2014, Dr. Greenberg, an internist, performed a consultative examination of Plaintiff.  (Tr. 649.)  The physical examination was unremarkable, except:

There was a slight scoliosis of the thoracic spine to the left. . . . There was positive straight leg raising pain on the right at 45 degrees. . . . She . . . had difficulty stooping. . . . There was decreased [range of motion] of both hips.[5]

(Tr. 650.)

Plaintiff was diagnosed with chronic anxiety, associated with frequent panic attacks; irritable bowel syndrome; and chronic low back pain, probably secondary to lumbar osteoarthritis, aggravated by obesity.  (Tr. 651.)  In conclusion, Dr.

---

[5] The Range of Motion Report Form shows that Plaintiff's hip flexion was 60 out of 100 degrees, extension was 20 out of 30 degrees, abduction was 25 out of 40 degrees, adduction was 10 out of 20 degrees, internal rotation was 25 out of 40 degrees, and external rotation was 30 out of 50 degrees.  (Tr. 653.)

Greenberg "felt that this patient's main problem was her psychiatric disorder" and he strongly suggested a psychological evaluation if it had not already been done. (*Id.*)

## B.    State Agency Non-Examining Physicians

### 1.    Leif Davis, Psy.D.

On December 13, 2013, Dr. Davis completed a Psychiatric Review Technique ("PRT") based on a review of the existing records.  (Tr. 118-19.)  Dr. Davis opined that Plaintiff had moderate difficulties in maintaining social functioning and in concentration, persistence, or pace.  (Tr. 118.)  Dr. Davis addressed Dr. Abeles's report, but found it was unsupported by the existing evidence, as the examination was generally within normal limits with a self-report of anxiety and depression.  (Tr. 118-19.)  Dr. Davis explained: "Allegations are partially credible. [The claimant] may be odd and have some thought problems[,] but the evidence is sparten [sic] based solely on a [consultative examination] with other evidence not supporting.  [Claimant] appears capable of most SRTs given [the] functional report and [medical evidence of record] other than [the consultative examination]."  (Tr. 119.)

On December 13, 2013, Dr. Davis also completed a Mental Residual Functional Capacity ("RFC") Assessment.  (Tr. 120-22.)  He opined that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions; in the ability to maintain attention and concentration for

extended periods; in the ability to interact appropriately with the general public; in the ability to respond appropriately to changes in the work setting; and in the ability to perform a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Davis added: "[Claimant] may need to work in an environment with minimal social interaction. [Claimant] would benefit from working with a nonconfrontational supervisor." (Tr. 122.) In summary, the doctor stated: "Claimant can understand, retain, and carry out simple instructions. Claimant can consistently and usefully perform routine tasks on a sustained basis, with normal supervision, and can cooperate effectively with public and co-workers in completing simple tasks and transactions." (*Id.*)

### 2.    Dr. Arthur Hamlin

On February 25, 2014, Dr. Hamlin completed a PRT, affirming Dr. Davis's December 13, 2013 PRT as written. (Tr. 148-49, 164-65.) On February 25, 2014, Dr. Hamlin also affirmed Dr. Davis's Mental RFC Assessment as written. (Tr. 151-54, 167-70.)

### 3.    Shakra Junejo, M.D.

On March 26, 2014, Dr. Junejo completed a Physical RFC Assessment based on a review of the file, including the consultative examination findings of Dr. Chodosh and Dr. Greenberg. (Tr. 150-51, 166-67.) Dr. Junejo opined, *inter*

*alia*, that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for a total of six hours, and sit for a total of six hours in an eight-hour workday.  (Tr. 150, 166-67.)

## III.    Discussion

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence, because he improperly discounted the examining opinions of Dr. Abeles, while elevating the non-examining opinions of Dr. Hamlin, as to Plaintiff's mental limitations, and because the ALJ failed to weigh the examining opinions of Dr. Chodosh as to Plaintiff's physical limitations.

### A.    Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.[6]  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Although a treating physician's opinion is generally

_____

[6] Some of Plaintiff's treating sources are nurse practitioners.  Evidence from such sources, which are considered not acceptable medical sources or "other sources," may be used to show the severity of a claimant's impairments and how it affects the claimant's ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p.

entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

At step two of the five-step sequential evaluation process, the ALJ found

that Plaintiff had the following severe impairments: degenerative disc disease of

the lumbar spine, obesity, affective disorder, and anxiety disorder. (Tr. 24.)

Then, the ALJ found that Plaintiff was capable of performing medium work,

except:

> [S]he is limited to performing only simple, routine tasks on a
> sustained basis with no fast-paced production requirements or
> quotas. She must avoid contact with others except for occasional,
> brief superficial interaction with the public, supervisors, and co-
> workers. She must avoid abrupt changes in work processes, as she
> can only handle gradual changes in the work processes.

(Tr. 26).

In making this finding, the ALJ discussed Plaintiff's testimony, the treatment

records, the consultative examinations conducted by Dr. Chodosh, Dr.

Greenberg, and Dr. Abeles, and the opinions of the State agency non-examining

physicians. (Tr. 26-32.) The ALJ addressed Plaintiff's testimony, in relevant part:

> The claimant testified that she was diagnosed with vertigo years ago.
> She receives medication from her regular doctor. She stated that
> she has vertigo three times a week. The claimant also testified that
> she has shortness of breath. If she speaks to someone for more
> than 40 minutes, she becomes short of breath and hyperventilates.
> She is on medication that helps. It does make her drowsy. After she
> takes[] her medication, she has to lie down for a 2-hour nap. She
> has constant brain fog. Her daughter takes her to the grocery store.
> She cannot drive far. She can drive within 5 miles from where she
> lives. . . . She stated that she also has motion sickness 3 times a
> week. She indicates that she has shortness of breath due to a
> nervous condition. She gets shortness of breath and every little
> thing bothers her. She takes Zoloft and Xanax. The Xanax causes
> her blood pressure to go up. . . . Anytime she goes somewhere, her
> blood pressure goes up.

(Tr. 27.)

The ALJ addressed Dr. Chodosh's examination as follows:

> In November 2013, the claimant underwent a consultative physical
> examination conducted by Lance Chodosh, M.D.  She alleged
> disability due to back pain, vertigo, anxiety attacks, hypertension,
> shortness of breath, angina, dizziness, and scoliosis. . . . She was
> able to walk and stand, but no[t] very extensively.  She could lift 20
> pounds occasionally.  On physical examination, her blood pressure
> was 102/84.  Dr. Chodosh indicated he did not perceive scoliosis. He
> noted there was no tenderness or paraspinal muscular spasm.  Gait
> was normal.  She indicated inability to squat and rise completely.
> The clinical impression was mental health issues including apparent
> panic disorder; chronic back pain of uncertain etiology, without
> physical signs of impairment; hypertension, apparently well
> controlled and without complications; and nonspecific dizziness
> without physical signs of impairment.  Dr. Chodosh noted that the
> claimant is able to stand, walk, sit, stoop, kneel, lift, carry, handle
> objects, see, hear, and speak normally.

(Tr. 30.)  Next, the ALJ addressed Dr. Greenberg's examination, which was

normal, except for "slight scoliosis of the thoracic spine to the left," "positive

straight leg raising pain on the right at 45 degrees," and "decreased range of

motion of both hips."  (*Id.* (also noting difficulty stooping).)

The ALJ noted that "the claimant ha[d] not required extended inpatient

hospitalization for a physical problem," she did not experience "any medication

side effects that would affect her ability to work," she did "not require an assistive

device for ambulation," and despite her complaints of dizziness and vertigo, "she

has not been referred for testing or consultation."  (*Id.*)  Further, the ALJ stated

that although Plaintiff had "greater limitation because of her obesity, the medical

evidence ha[d] not shown extreme limitation." (*Id.*) The ALJ found that Plaintiff's "limitations resulting from her obesity would only prevent her from doing strenuous work activity." (*Id.*)

The ALJ then turned to Plaintiff's mental impairments and the consultative examination by Dr. Abeles:

> [I]n December 2013, the claimant underwent a consultative mental status examination conducted by Linda Abeles, Ph.D. The claimant reported that since age 32, she had suffered from panic attacks that have worsened in the past five years. She reported that she experienced panic attacks every three months, and had made trips to the Emergency Room believing she was having a heart attack. Upon interview, the claimant reported experiencing feelings of depression along with anxiety. Sporadic neurovegetative disturbances in sleep and appetite were also reported. . . . [H]er thought processes appeared marked by paranoia and often appeared circumstantial. She was diagnosed with anxiety disorder, NOS and personality disorder, NOS with dependent and schizotypal traits. Her Global Assessment of Functioning (GAF) score was 55. Medical and mental conditions including [sic] panic attacks. Upon evaluation, the claimant appeared to be suffering from symptoms of a thought disorder as well as a personality disorder[,] including dependent and schizotypal traits. Dr. Abeles indicated that her presentation precluded her from obtaining or maintaining employment and in this regard, she would appear to have a great deal of difficulty in getting along with her supervisors or her peers.

(Tr. 31.)

The ALJ did "not fully accept" Dr. Abeles's opinion. (*Id.*) He explained:

> [Dr. Abeles] did not perform any psychological testing and her opinion appears to be based primarily upon the claimant's subjective complaints. Dr. Abeles did not observe any type of panic attack. Further, . . . Dr. Abeles'[s] opinion is not consistent with the other evidence contained in the medical record and the claimant's activities of daily living.

13

(*Id.*)  He added:

> The [ALJ] accepts that the evidence shows some moderate
> limitations regarding social interactions and in concentrating and
> attending to work tasks, but these are not disabling.  The claimant
> has not required psychiatric hospitalizations and was only prescribed
> medication by her treating physician with no referrals for more
> significant mental health [sic] or counseling.  The evidence clearly
> indicates that the claimant experiences no more than moderate
> limitation when she is compliant with her medications.  She had
> exacerbation of symptoms with stress. There is no indication of panic
> attacks or crying spells of the frequency or severity that would
> preclude the claimant from performing gainful work activity.

(*Id.*)

The ALJ then pointed out that "the claimant cares for herself, cooks meals,

performs household chores, does the laundry, cares for pets, and goes grocery

shopping," she "is able to drive, shop in stores, pay bills, count change, and

handle a [bank] account," as well as talk on the phone and send text messages to

family members.  (*Id.*)  The ALJ found that "[h]er current activities of daily living

otherwise appear to be self-limited only."  (*Id.*)

Finally, the ALJ noted that the State agency medical consultant (Dr.

Junejo) found that Plaintiff was able to do medium work, and the State agency

psychological consultant[7] found that, despite Plaintiff's moderate limitations in

concentration, persistence, or pace and in social functioning, "she remained

---

[7] It is unclear whether the ALJ referred to Dr. Hamlin or Dr. Davis, or both, but in
any event, these doctors' opinions are identical, because on February 25, 2014, Dr.
Hamlin reviewed the evidence in the file and affirmed Dr. Davis' December 13, 2013
PRT and Mental RFC Assessment as written.  (Tr. 149, 170.)

capable of performing simple, routine task[s] and relating to others in a socially appropriate manner," which the ALJ found "to be well supported and consistent with the medical evidence." (*Id.*) In sum, the ALJ concluded that his RFC assessment was "supported by the record as a whole." (Tr. 32.)

## C. Analysis

The ALJ's RFC assessment and hypothetical question to the Vocational Expert ("VE") are supported by substantial evidence. First, the ALJ did not err in his evaluation of Dr. Abeles's opinions. Dr. Abeles opined that Plaintiff's "presentation preclude[d] her from obtaining or maintaining employment and in this regard, she would appear to have a great deal of difficulty in getting along with her supervisors or her peers." (Tr. 611.) The ALJ decided to "not fully accept" this opinion and his reasons for doing so are supported by substantial evidence. (Tr. 31.)

As the ALJ stated, Dr. Abeles "did not perform any psychological testing and her opinion appears to be based primarily upon the claimant's subjective complaints." (*Id.*) The ALJ also stated that Dr. Abeles's opinion was not consistent with Plaintiff's activities of daily living and the other medical evidence of record, which showed some moderate limitations that were not disabling, no evidence of psychiatric hospitalizations, conservative treatment consisting only of medications, and "no referrals for more significant mental health or [sic] counseling." (*Id.*) The ALJ further stated that there was "no indication of panic

attacks or crying spells of the frequency or severity that would preclude the claimant from performing gainful work activity," that Plaintiff's symptoms were exacerbated with stress, and that she experienced "no more than moderate limitation when she [was] compliant with her medications." (*Id.*) The ALJ's statements are supported by substantial evidence.

As an initial matter, Dr. Abeles's opinion was based on a one-time mental status examination, a clinical interview of Plaintiff, and a review of a psychological evaluation completed in June 2009 and a medical record from June 2009. (Tr. 609-10.) In her report, Dr. Abeles did not list any particular psychological tests performed and seemed to rely on Plaintiff's statements.[8]

Importantly, as the ALJ noted, the record here does not reflect any psychiatric hospitalizations and shows conservative treatment, consisting of medications, which Plaintiff seemed to tolerate. (*See* Tr. 583, 587, 592, 657, 682, 698, 718, 723, 732, 737, 746, 748-49, 762.) When Plaintiff was compliant with treatment, her symptoms were alleviated. (*See id.*; *cf.* Tr. 583 ("She has been out of her medication for two week[s] and has experienced increased [shortness of

---

[8] Although "[d]epression and anxiety impairments are necessarily based on 'subjective symptoms' to a substantial degree," Plaintiff's reliance on *Diaz v. Commissioner of Social Security*, No. 6:12-cv-1108-Orl-31DAB, 2013 WL 1880918, *5 (M.D. Fla. Apr. 18, 2013) (report and recommendation adopted by 2013 WL 1880914 (M.D. Fla. May 6, 2013)), is misplaced, because that case is distinguishable. In *Diaz*, the opinions at issue were "based on numerous clinical findings positive for debilitating depression and anxiety," and were rendered by "a board certified psychiatrist who has treated the patient for years" and after a "review of records" and "objective psychological testing." *Id.*

breath] related to her anxiety and situation."); Tr. 749 ("Encouraged [patient] to take Zoloft daily as prescribed, educated on need for medication adherence for effective results.").)  When she was under stress, her symptoms were exacerbated.  (*See* Tr. 737 ("The anxiety is aggravated by conflict or stress, lack of sleep, social interactions and Menopause.").)  For that reason, Plaintiff was encouraged to exercise regularly and practice stress relief techniques in conjunction with her meditations.  (Tr. 749.)

Moreover, as the ALJ noted, the record does not indicate that Plaintiff's panic attacks, in terms of frequency and/or severity, were disabling.[9]  (*See* Tr. 657 (reporting "history of panic attacks relieved by Xanax"); Tr. 737 ("The patient's relieving factors are medication[s] (Zoloft and Xanax). . . . Periodic panic attacks at [the] grocery store or [while] running errands, once a month[,] when she has to get in the car, [Z]oloft is helping with [the] physical attack[.]"); Tr. 746 (noting Plaintiff takes Xanax only if she leaves the house); Tr. 682 ("Much less anxiety since [she] quit [her] job, takes Xanax only occasionally . . . ."); Tr. 698 (noting Plaintiff was taking Xanax on and off); Tr. 718 (noting that Plaintiff "uses Xanax PRN for anxiety"); Tr. 723 ("Diane has been doing well, she goes days without taking the [X]anax, and truly only takes [it] if needed."); Tr. 727 (noting

---

[9] The ALJ's statement that "Dr. Abeles did not observe any type of panic attack" (Tr. 31), is supported by the record.  However, as stated in Plaintiff's brief, "Plaintiff can hardly be expected to generate a panic attack at will and the ability to do [that] would be malingering."  (Doc. 19 at 19.)

Plaintiff had occasional anxiety attacks); Tr. 588 ("Reports continued panic attacks and anxiety when in public. Requests [a] refill of Xanax to take PRN when in public situation[s], . . . does not want trial of another anti-depression, ant[i]-anxiety med[ication.]"); Tr. 659 (noting Plaintiff "became anxious while discussing her [blood pressure] and had to lie down on the exam table[,] . . . . [but] [w]as able to deep breath [sic] to calm herself down"); Tr. 762 ("She does have a history of anxiety, [but] rest or Xanax helps with her symptoms."); *but see* Tr. 732 ("Has been taking [X]anax daily lately. [Shortness of breath] usually [associated with] panic attacks but lately have been occurring without anxiety.").) As the ALJ noted, Dr. Abeles's opinion was also inconsistent with Plaintiff's daily activities, which included household chores, cooking, caring for pets, grocery shopping, driving, paying bills, talking on the phone, and messaging. (Tr. 31, 64, 307-09, 317-19.)

Finally, the ALJ did not err in his consideration of the State agency consultant's opinions as to Plaintiff's mental limitations. After a review of the records, including Dr. Abeles's report, Dr. Hamlin found that, despite some moderate limitations, Plaintiff could "consistently and usefully perform routine tasks on a sustained basis, with normal supervision, and [could] cooperate effectively with public and co-workers in completing simple tasks and transactions." (Tr. 151-54, 167-70.) The ALJ was justified in relying on Dr. Hamlin's opinions as "well supported and consistent with the medical evidence,"

as shown above.  (Tr. 31.)

Therefore, based on the foregoing, substantial evidence supports the ALJ's decision to not fully accept Dr. Abeles's opinion that Plaintiff "would appear to have a great deal of difficulty in getting along with her supervisors or her peers." (*Id.*)  To the extent Dr. Abeles opined that Plaintiff's "presentation precluded her from obtaining or maintaining employment" (*id.*), this was not a medical opinion, but, instead, an opinion on an issue reserved to the Commissioner, and, as such, the ALJ was not required to give this opinion "any special significance," 20 C.F.R. §§ 404.1527(d), 416.927(d).

Plaintiff further argues that the ALJ failed to weigh the opinions of Dr. Chodosh as to her physical limitations.  The Court finds no reversible error as to the ALJ's evaluation of Dr. Chodosh's opinions.  Although the ALJ did not explicitly indicate the weight accorded to these opinions, Dr. Chodosh's opinions were not inconsistent with the ALJ's RFC determination.  In other words, Dr. Chodosh did not determine that Plaintiff was more limited than the ALJ found.

Although Dr. Chodosh initially noted that Plaintiff's cervical range of motion was slightly decreased by pain (Tr. 602), he ultimately concluded, based solely on the objective evidence, that Plaintiff was "able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak *normally*" (Tr. 603

(emphasis added)).[10]  He added that Plaintiff's chronic back pain was "of uncertain etiology, without physical signs of impairment," her hypertension was "well-controlled and without complications," and her non-specific dizziness was "without physical signs of impairment on [the day of the] exam."  (*Id.*)  Therefore, any error in the evaluation of Dr. Chodosh's opinions was harmless.[11]

Based on the foregoing, the ALJ's RFC assessment and hypothetical question to the VE are supported by substantial evidence; thus, any argument that the ALJ improperly relied on the VE's testimony is rejected.  The ALJ was not required to include in the hypothetical question any limitations or opinions that he had properly rejected.  *See Crawford*, 363 F.3d at 1161 (stating that the ALJ is not required to include findings in the hypothetical question that the ALJ has properly rejected as unsupported by the record).  Thus, to the extent Plaintiff argues that the hypothetical question was inconsistent with the opinions of Dr. Abeles and/or the statements made by Dr. Chodosh, the ALJ was not required to

---

[10] To the extent Dr. Chodosh noted that Plaintiff was "able to walk and stand, but not very extensively," "bend over at the waist and squat occasionally," and "lift 20 pounds occasionally," it appears that he was merely recording Plaintiff's reported limitations.  (Tr. 601 (also stating, *inter alia*, that Plaintiff was "independent in activities of daily living" and was "physically able to drive, but avoid[ed] driving in heavy traffic or for long distances because of anxiety").)  This conclusion is supported by Dr. Chodosh's impressions after the examination that Plaintiff could perform all these activities "normally" and that there were no physical signs of impairment on the day of the exam.  (Tr. 603.)

[11] The Eleventh Circuit has recognized the applicability of the doctrine of harmless error in the context of social security cases.  *See, e.g.*, *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam).

include opinions or statements that he had properly rejected.[12]

## IV.    Conclusion

The Court does not make independent factual determinations, re-weigh the

evidence, or substitute its decision for that of the ALJ.  Thus, the question is not

whether the Court would have arrived at the same decision on *de novo* review;

---

[12] In a footnote, Plaintiff seems to argue that the hypothetical question to the VE was improper, because it did not include a limitation for alternating between sitting and standing every 30 minutes based on Plaintiff's problems with standing for long periods of time and her history of vertigo, motion sickness, and other unclassified bouts of dizziness associated with nausea.  (Doc. 19 at 21 n.2.)  However, the records on which Plaintiff relies to support her alleged problems with standing for long periods of time include her own statements and those made by her son.  (Tr. 84, 311, 321, 328.)  While the ALJ considered these subjective complaints, he found them not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 29.)  Therefore, to the extent Plaintiff has properly raised the issue of credibility, she has not shown that the ALJ's evaluation of her subjective symptoms should be disturbed as it seems to be supported by substantial evidence.

As to Plaintiff's vertigo, motion sickness, and/or dizziness, most of the records on which she relies actually predate her alleged disability onset date.  (*See* Tr. 408, 447-48, 456-57, 461, 492.)  A note from Shands, dated April 19, 2012, lists motion sickness as a secondary diagnosis (Tr. 534), but the assessment from that visit provides, in relevant part, "[h]istory of motion sickness with p.r.n. [M]eclizine with *no symptoms of this recently*" (Tr. 535 (emphasis added)).  In addition, Dr. Chodosh noted, as part of his review of the medical records on November 22, 2013, that Plaintiff experienced frequent vertigo with nausea and motion sickness, which seemed to increase during stress, for which she used occasional Meclizine to help control the symptom.  (Tr. 600.)  However, in the impressions section, Dr. Chodosh listed "[n]onspecific dizziness, without physical signs of impairment on today's exam."  (Tr. 603.)  Further, a treatment note from Betty J. Krause, ARNP, dated September 8, 2015, lists vertigo among Plaintiff's other diagnoses, and states: "[Patient] to continue with [M]eclizine, intermittent use, with PRN vertigo, [she] has had [an emergency room evaluation] for similar [symptoms] in [the] past, [she] had CT [scan of the] head[] in [the emergency room which was] negative."  (Tr. 740.)  Finally, the only other record on which Plaintiff relies is her testimony from the hearing that reading for more than 30 minutes causes nausea and/or vertigo.  (Tr. 70.)  However, this subjective complaint does not seem to be mentioned anywhere else in the record, and appears inconsistent with Plaintiff's reported ability to watch television without problem for six hours a day.  (*Id.*)

rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the undersigned concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 4, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record